UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BERNARD H. COOK )<br>    Plaintiff )<br>)<br>v. )<br>)<br>MIMI DRAGONE, INC. )<br>    Defendant )<br>_____ ) | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED<br><br><br>FEBRUARY 27, 2013 |

## COMPLAINT

1. This is an action brought by a consumer against an automobile dealership for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.,* the Connecticut Retail Installment Sales Finance Act ("RISFA"), Conn. Gen. Stat. §§ 36a-770 *et seq.,* the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.,* and for civil forgery, Conn. Gen. Stat. § 52-565.

2. Plaintiff, Bernard H. Cook, ("Cook" or "Plaintiff") is a consumer residing in Stamford, Connecticut, and he is a "consumer" as that term is defined in 15 U.S.C. § 1602(i).

3. Defendant, Mimi Dragone Incorporated ("Mimi Dragone" or "Defendant"), is a Connecticut corporation that operates car dealerships in Waterbury and Bridgeport. Mimi Dragone is a "creditor" as defined by 15 U.S.C. § 1602(g).

4. Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1640(e) and 28 U.S.C. § 1367.

5. This Court has jurisdiction over Mimi Dragone because it is located in Connecticut and regularly does business in Connecticut.

6. Venue in this Court is proper, because the transaction alleged herein occurred in this state.

7. Mimi Dragone sells used vehicles, and it markets to subprime credit purchasers.

8. Specifically, on its website Mimi Dragone states:

**Do you finance people with bad credit?**
YES. Less then [sic] perfect credit is our specialty.  We have several lenders with whom we've built long relationships that will lend money to people that other dealerships cannot.  We can get anyone approved in a vehicle.  I would say more then [sic] half of our customers are surprised about the interest rate and deal they get even with less then [sic] perfect credit!  The two biggest stipulations are:

- **You cannot be in an open bankruptcy**
- **You must have a valid Connecticut drivers license**

Everything else goes. [1]

9. Additionally, Mimi Dragone's website also states in large, bold face print "**We guarantee financing....Absolutely....Without a doubt.**"[2]

10. On or around December 28, 2012, Plaintiff visited Mimi Dragone at its Bridgeport location for purposes of buying a motor vehicle.

11. He was interested in a 2003 Ford Escape sport utility vehicle (the "Vehicle") that was on the lot.

12. There was a sticker on Vehicle indicating that it could be purchased for weekly payments of $91/week.

13. Plaintiff discussed the Vehicle with Hector Diaz, a salesman for Mimi Dragone.

---

[1] http://www.dragone.com/faqs.htm, last visited on February 26, 2013.
[2] http://www.dragone.com/buy-here-pay-here.htm, last visited February 26, 2013.

2

14. Diaz was, at all times, acting as the authorized agent and representative for Mimi Dragone.

15. Diaz collected credit information from Plaintiff and told him that he was approved to purchase the Vehicle, that he would have to make a down payment of $2,000, and that the payments would be $91/week.

16. Plaintiff informed Diaz that he could pay only $500 at that time and that he could pay the remainder of the downpayment in comparable installments every two weeks.

17. Diaz told Plaintiff that Mimi Dragone could accept that and that it would hold the Vehicle for him until he had paid the full $2,000 downpayment.

18. Diaz then prepared, and Plaintiff signed, a purchase order dated December 28, 2012 to purchase the Vehicle for a cash price of $9,905 and a total cash price of $12,704.19 with taxes, fees, a service contract, and a GAP contract.

19. At that time, Diaz provided Plaintiff with a document entitled "Mimi Dragone Incorporated Requirement List" that indicated that the lien holder for the Vehicle would be Auto Loan in Andover, MA.

20. The Requirement List also indicated that the installment payments would be $91.79/week and that Plaintiff would be required to make the first installment before he would be permitted to take delivery of the Vehicle.

21. On or about January 11, 2013, Plaintiff returned to Mimi Dragone and paid $500 towards the down payment.

22. On January 24, 2013, Plaintiff returned to Mimi Dragone with the intention of making the third installment of $500 towards the downpayment.

23. However, Plaintiff decided to pay only $200 at that time because he was frustrated that Diaz was not permitting him to test drive the Vehicle and had not yet provided him with a Carfax report despite prior promises to do so.

24. Diaz assured Plaintiff that he would be given a Carfax report and would be permitted to test drive the Vehicle before taking delivery of the Vehicle.

25. Plaintiff and Diaz agreed that Plaintiff would bring $800 in two weeks, at which time he would take delivery following the test drive of the Vehicle and the provision of the Carfax report.

26. Diaz then presented contract documents, including a retail installment sales contract.

27. Plaintiff looked at the retail installment sales contract and, after confirming that the installment payments were approximately $91/week, he signed it.

28. Plaintiff requested that Diaz provide him with a copy of the papers that he signed, and Diaz responded that Plaintiff would get the copies in two weeks when he picked up the car.

29. The next day, January 25, Plaintiff obtained insurance for the Vehicle.

30. Thereafter, on approximately January 26, Plaintiff received a call from Auto Loan regarding the retail installment contract. During the course of this conversation, the individual from Auto Loan informed Plaintiff that the payments under the contract were over $126/week.

31. Plaintiff immediately called Diaz and asked about the change in the payment amount. Diaz responded that he had "decided to put [Plaintiff] into a two-year contract" and that the payments had gone up.

32. Plaintiff protested that he could not afford those payments, that this was different from what had been agreed upon, and that Mimi Dragone could not change the terms of the contract without contacting him first.

33. Diaz responded that he would speak with his boss and get back to him.

34. Diaz did not return Plaintiff's call.

35. After several attempts, Plaintiff was eventually able to reach Ralph Gamboian, Mimi Dragone's Sales and Finance Manager.

36. Plaintiff informed Gamboian that he had paid $1,200 and that he had just learned that the payments had increased and that he could not afford the higher payments.

37. Plaintiff requested a return of the $1,200.

38. Gamboian responded that it was "not [his] problem, we don't give money back."

39. Subsequently, Auto Loan sent Plaintiff a letter informing him that his contract dated January 26, 2013 had been reassigned to Mimi Dragone.

40. Plaintiff did not sign any agreements on January 26, 2013, and he was not at Mimi Dragone on that date.

41. On information and belief, Mimi Dragone prepared a forged contract and submitted it to Auto Loan.

42. Mimi Dragone is liable for double Plaintiff's damages for civil forgery pursuant to Conn. Gen. Stat. § 52-565.

43. Mimi Dragone failed to provide Plaintiff with any of the material TILA-mandated disclosures required by 15 U.S.C. § 1638 and, based upon the available

5

information, Plaintiff believes that the disclosures made to him regarding the annual percentage rate were inaccurate based upon the requirement that the first payment be made prior to delivery and the delay between the date of the contract and the extension of credit.  Additionally, the disclosures regarding the amount of installment payments and other material disclosures differed from the terms of financing offered to Plaintiff.

44.  For its TILA violations, Mimi Dragone is liable to Plaintiff for $2,000 plus a reasonable attorney's fee.

45.  Mimi Dragone failed to provide Plaintiff with a copy of the retail installment sales contract in violation of RISFA, Conn. Gen. Stat. 36a-771(a) and has also violated RISFA by virtue of its TILA violations, which are incorporated into RISFA by operation of Conn. Gen. Stat. § 36a-771(b), and Plaintiff is entitled to a rescission of the contract and a return of his $1,200.

46.  Through the above-described conduct, Mimi Dragone violated CUTPA.

47.  As a result of the aforedescribed conduct, Plaintiff suffered an ascertainable loss and damages, including his loss of $1,200, his inability to obtain another car due to Mimi Dragone's improper retention of the funds that would otherwise be available for a downpayment, and a loss of employment caused by his inability to accept employment due to the lack of transportation.

48.  For Mimi Dragone's violations of CUTPA, Plaintiff is entitled to his damages plus punitive damages and a reasonable attorney's fee.

**Wherefore, Plaintiff claims,** actual damages pursuant to 15 U.S.C. § 1640(a)(1), statutory damages of $2,000, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(3); a rescission of the contract and a return of the amounts paid thereunder; actual damages pursuant to Conn. Gen. Stat. § 42-110g(a); statutory punitive damages pursuant to Conn. Gen. Stat. § 42-110g(g); attorney's fees pursuant to Conn. Gen. Stat. § 42-110g(d); double damages pursuant to Conn. Gen. Stat. § 52-565; and attorney's fees pursuant to Conn. Gen. Stat. § 42-150bb.

**PLAINTIFF, BERNARD H. COOK**

By: /s/ Daniel S. Blinn
Daniel S. Blinn, ct02188
dblinn@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408
Fax (860) 571-7457